No. 24-20431

## IN THE UNITED STATES COURT OF
## APPEALS FOR THE FIFTH CIRCUIT

---

EVAN NORMAN,
Plaintiff –Appellee,

v.

LEE INGLE AND CHRISTOPHER J. SUTTON
Defendants – Appellants.

---

Appeal from the United States District Court for the Southern District of Texas
In Case No. 4:23-CV-1042, the Honorable Kenneth M. Hoyt presiding.

---

## BRIEF OF APPELLANT LEE INGLE

---

SUBMITTED BY:

**OF COUNSEL:**

**ATTORNEY-IN-CHARGE:**

CHRISTIAN D. MENEFEE
State Bar No. 24088049
County Attorney of
Harris County, Texas
JONATHAN FOMBONNE
State Bar No. 24102702
First Assistant County Attorney
1019 Congress, Floor
Houston, Texas 77002

**SUZANNE BRADLEY**
Sr. Assistant County Attorney
State Bar No. 00793375
Federal ID No. 24567
Tel: (713) 274-5330 (direct)
Suzanne.Bradley@harriscountytx.gov
**Office of The Harris County Attorney**
1019 Congress
Houston, Texas 77002

**Attorney For Defendant-Appellant Lee Ingle**

December 23, 2024.

No. 24-20431

## IN THE UNITED STATES COURT OF
## APPEALS FOR THE FIFTH CIRCUIT

---

EVAN NORMAN,
Plaintiff –Appellee,

v.

LEE INGLE AND CHRISTOPHER J. SUTTON
Defendants – Appellants.

---

Appeal from the United States District Court for the Southern District of Texas
In Case No. 4:23-CV-1042, the Honorable Kenneth M. Hoyt presiding.

---

## **CERTIFICATE OF INTERESTED PERSONS**

---

The undersigned counsel of record certifies that the following persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made so the judges of this Court can evaluate possible disqualification or recusal.

| Mr. Norman-Appellees | Counsel |
|---|---|
| Evan Norman | Appellate and Trial Counsel:<br>Randall L. Kallinen<br>Texas Bar No. 00790995<br>AttorneyKallinen@aol.com<br>Alexander C. Johnson<br>Texas Bar No. 24123583<br>Alex@acj.legal<br>511 Broadway<br>Houston, TX 77012<br>Telephone: (713) 320-3785<br>Fax: (713) 893-6737<br><br>Daniel Barton<br>Texas Bar No. 00789774<br>1201 Shepherd Drive<br>Houston, Texas 77007<br>dbarton@burtonlawgroup.com<br>Telephone: (713) 227-4747 |
| **Defendants** | **Counsel** |
| Harris County; Sheriff Ed Gonzalez | Trial Counsel:<br>Gregory Burnett<br>Assistant County Attorney<br>Texas Bar No. 24057785<br>Greg.Burnett@harriscountytx.gov<br>Telephone: (713) 274-5224<br>James C. Butt<br>Assistant County Attorney<br>Texas Bar No. 24040354<br>1019 Congress<br>Houston, TX 77002<br>Telephone: (713) 274-5133 |
| **Defendants-Appellants** | **Counsel** |
| Deputy Lee Ingle | Appellate and Trial Counsel:<br>Suzanne Rene' Bradley<br>Senior Assistant County Attorney |

| | |
|---|---|
| | Federal ID No. 24567<br>Texas Bar No. 00793375<br>1019 Congress, 15th Floor<br>Houston, TX 77002<br>Telephone: (713) 274-5330<br>Fax: (713) 755-8924<br>Suzanne.Bradley@harriscountytx.gov |
| Deputy Christopher J. Sutton | <u>Appellate and Trial Counsel:</u><br>Frank J. Ford<br>Assistant County Attorney<br>State Bar No. 24012642<br>Fed Bar No. 565385<br>1019 Congress, 15th Floor<br>Houston, TX 77002<br>Phone: 713-274-5166 (direct)<br>E: Frank.Ford@harriscountytx.gov<br>Susannah Mitcham<br>Assistant County Attorney<br>State Bar No. 24107219<br>Fed Bar No. 3640160<br>Tel: (713) 274-5383 (direct)<br>E:Susannah.Mitcham@harriscountytx.gov |

/s/ Suzanne Bradley
**SUZANNE BRADLEY**
Senior Assistant County Attorney

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Fed. R. App. P. 34(a) and Fifth Circuit Rule 28.2.3, Appellant Deputy Ingle believes oral argument will greatly aid this court in understanding the material facts of this case, especially in light of the videos.

# **TABLE OF CONTENTS**

Page(s)

CERTIFICATE OF INTERESTED PERSONS ......................................................III

STATEMENT REGARDING ORAL ARGUMENT ........................................... VI

TABLE OF CONTENTS........................................................................ VII

TABLE OF AUTHORITIES .................................................................... IX

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES...........................................................................2

STATEMENT OF THE CASE...............................................................................3

    I.   PROCEDURAL HISTORY. ........................................................................3

    II.  FACTUAL STATEMENT. ..........................................................................4

SUMMARY OF THE ARGUMENT ....................................................................11

ANALYSIS..........................................................................................................11

    I.   STANDARD OF REVIEW FOR QUALIFIED IMMUNITY. ...........................11

    II.  STANDARD OF REVIEW FOR SUMMARY JUDGMENT. ..........................12

    III. DISTRICT COURT DID NOT EVALUATE THE VIDEOS. .........................14

ARGUMENT .....................................................................................................16

    I.   ANALYSIS. ...........................................................................................16

    A. The lower court did not assess the video evidence that directly contradicts
        material parts of Norman's allegations.........................................16

    B. Norman has not shown a violation of a constitutional right.........................17

    C. The amount of force used was not excessive or unreasonable.......................18

    D. The severity of the crime at issue here weighs in favor of Officer Ingle. .....20

    E. Norman posed an immediate threat to the safety of the officers and others
        weighs in favor of Officer Ingle and Sutton. ..................................20

    F. Norman's resistance weighs in favor of Deputy Ingle. .................................21

    G. The speed with which Deputy Ingle resorted to force was in direct response
        to the speed at which Norman attacked him.................................23

H. Even had Deputy Ingle violated a statutory or constitutional right, the right was not clearly established at the time of the challenged conduct. ...............24

I. Cases cited by Norman do not help him. .......................................................25

J. Deputy Ingle is qualifiedly immune. .............................................................27

K. Plaintiff's cases do not support denial of qualified immunity .......................28

L. Still other cases show a clear consensus that Deputy Ingle was reasonable. 33

M. Plaintiff's expert relies on false "facts" and the opinion cannot be relied upon at this stage. .........................................................................................34

CONCLUSION ....................................................................................................36

CERTIFICATE OF SERVICE .............................................................................37

CERTIFICATE OF COMPLIANCE....................................................................38

# TABLE OF AUTHORITIES

Page(s)

## *Cases*

*Allen v. Rapides Parish Sch. Bd.*,
  204 F.3d 619 (5th Cir. 2000) ........................................................ 13, 14

*Bell v. Wolfish*,
  441 U.S. 520 (1979) ...............................................................................19

*Betts v. Brennan*,
  22 F.4th 577 (5th Cir. 2022) .................................................................22

*Brinegar v. United States*,
  338 U.S. 160, (1949) ..............................................................................19

*Brosseau v. Haugen*,
  543 U.S. 194 (2004) ...............................................................................29

*Brown v. Callahan*,
  623 F.3d 249 (5th Cir. 2010) ...................................................................1

*Brown v. City of Houston*,
  337 F.3d 539 (5th Cir. 2003) .................................................... 13, 14, 15

*Buehler v. Dear*,
  27 F.4th 969 (5th Cir. 2022) .................................................... 17, 19, 22

*Bush v. Strain*,
  513 F.3d 492 (5th Cir. 2008) .................................................................24

*Cadena v. Ray*,
  728 F. App'x 293 (5th Cir. 2018, *per curiam*) ....................................33

*Carnaby v. City of Houston*,
  636 F.3d 183 (5th Cir.2011) .....................................................................1

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...............................................................................13

*City of San Antonio*,
No. 22-50196, 2023 WL 3019686 (5th Cir. Apr. 20, 2023).................................20

*Craig v Martin*,
49 F.4th 404, 417 (5th Cir. 2022).................................................................. 24, 25

*Curran v. Aleshire*,
800 F.3d 656 (5th Cir. 2015) ...............................................................................27

*Darden v. City of Fort Worth*,
880 F.3d 722 (5th Cir. 2018) ...............................................................................17

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993).............................................................................................35

*Davidson v. Fairchild Controls Corp.*,
882 F.3d 180 (5th Cir. 2018) ...............................................................................12

*DeLaPaz v. Coy,*
786 F.3d 367 (5th Cir. 2015) .................................................................................1

*Deville v. Marcantel*,
567 F.3d 156 (5th Cir.2009) ........................................................................ 18, 30

*Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*,
738 F.3d 703 (5th Cir. 2013) ....................................................................... 13, 14

*Doss v. Helpenstell,*
*626 F. App'x 453 (5th Cir. 2015)*.........................................................................30

*Edwards v. Oliver*,
31 F.4th 925 (5th Cir. 2022) ...............................................................................12

*Estate of Davis Ex Rel. McCully v. City of North Richland Hills,*
406 F.3d 375 (5th Cir. 2005) .................................................................................1

*Flores v. City of Palacios,*
381 F.3d 391 (5th Cir.2004) ..................................................................................2

*Fraire v. City of Arlington,*
957 F.2d 1268 (5th Cir. 1992) .............................................................................22

x

*Garcia v. Blevins*,
   957 F.3d 596 (5th Cir. 2020) ...............................................................24

*Gates v. Tex. Dep't of Protective & Regulatory Servs.*,
   537 F.3d 404 (5th Cir. 2008) ...............................................................21

*Gibson v. Rich*,
   44 F.3d 274 (5th Cir. 1995) .................................................................19

*Gomez v. Chandler*,
   163 F.3d 921 (5th Cir. 1999) ...............................................................18

*Goodson v. City of Corpus Christi*,
   202 F.3d 730 (5th Cir. 2000) ...............................................................31

*Graham v. Connor*,
   490 U.S. 386 (1989) .............................................................................17

*Griggs v. Brewer*,
   841 F.3d 308 (5th Cir. 2016) ......................................................... 32, 33

*Heien v. North Carolina*,
   574 U.S. 54 (2014) ...............................................................................19

*Hogan v. Cunningham*,
   722 F.3d 725 (5th Cir. 2013) ...............................................................34

*Hope v. Pelzer*,
   536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ......................32

*Hunter v. City of Houston*,
   564 F. Supp. 3d 517 (S.D. Tex. 2021) ............................................ 33, 34

Johnson v. Glick,
   481 F.2d 1028 (2d Cir. 1973) ..............................................................17

*Jones v. City of Jackson*,
   203 F.3d 875 (5th Cir. 2000) .................................................................4

*Joseph v. Bartlett*,
   981 F.3d 319 (5th Cir. 2020) ..................................... 12, 17, 23, 26

*King v. Handorf*,
   821 F.3d 650 (5th Cir. 2016) ..................................................................12

*Kisela v. Hughes*,
   138 S. Ct. 1148 (2018)..........................................................................25

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)..............................................................................35

*Malley v. Briggs*,
   475 U.S. 335 (1986)..............................................................................22

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985)................................................................................2

*Moore v. Ashland Chem. Inc.*,
   151 F.3d 269 (5th Cir. 1998) ..................................................................35

*Morrow v. Meachum*,
   917 F.3d 870 (5th Cir. 2019) ..................................................................25

*Mullenix v. Luna*,
   577 U.S. 7 (2015).......................................................................... 2, 29, 34

*Newman v. Guedry*,
   703 F.3d 757 (5th Cir. 2012) ................................................... 18, 26, 27

*Ontiveros v. City of Rosenberg*,
   564 F.3d 379 (5th Cir. 2009) ..................................................................17

*Pearson v. Callahan*,
   555 U.S. 223 (2009)........................................................................ 21, 32

*Poole v. City of Shreveport*,
   691 F.3d 624 (5th Cir. 2012) ................................................... 17, 31, 32

*Ramirez v. Escajeda*,
   44 F.4th 287 (5th Cir. 2022) ..................................................................12

*Ramirez v. Martinez*,
   716 F.3d 369 (5th Cir. 2013) ........................................... 23, 26, 31, 32

*Saucier v. Katz,*
   533 U.S. 194 (2001) ................................................................ 29, 32

*Scott v. Harris,*
   550 U.S. 372 (2007) .................................................................. 1, 14

*Solis v. Serrett*,
   31 F.4th 975 (5th Cir. 2022) ................................... 11, 16, 22, 23

*Tarver v City of Edna*,
   410 F.3d745, 750 (5th Cir. 2005) ............................................. 34

*Terrell v. Allgrunn,*
   ___ F.4th ___, 2024 WL 3948595 (5th Cir. Aug. 27, 2024)................. 12

*Trammell v. Fruge*,
   868 F.3d 332 (5th Cir. 2017) ...................................................... 23

*Tucker v Coty of Shreveport*,
   998 F.3d 165, 180-81 (5th Cir. 2021)................... 24, 28, 29, 34

*United Fire & Cas. Co. v. Hixson Bros., Inc.*,
   453 F.3d 283 (5th Cir. 2006) ...................................................... 13

*Watkins v. Telsmith, Inc.*,
   121 F.3d 984 (5th Cir. 1997) ...................................................... 35

### Rules

Fed. R. App. P. 32(a)(5) ................................................................ 39

Fed. R. App. P. 32(a)(6) ................................................................ 39

Fed. R. App. P. 32(a)(7)(B) ......................................................... 39

Fed. R. App. P. 32(f) ..................................................................... 39

FED. R. EVID. 702 ................................................................. 35, 36

Fifth Circuit Rule 32.2 ................................................................. 39

## JURISDICTIONAL STATEMENT

This Court reviews a denial of a summary judgment based on qualified immunity by determining whether the lower court erred in assessing the legal significance of the conduct that it deemed sufficiently supported the denial of summary judgment. *Brown v. Callahan,* 623 F.3d 249, 252 (5th Cir. 2010). This Court's jurisdiction over qualified immunity extends to the elements of excessive force that are directly implicated by this defense. *DeLaPaz v. Coy,* 786 F.3d 367, 371 (5th Cir. 2015). This Court reviews *de novo* the district court's conclusions concerning the legal consequences - the materiality of the facts. *Estate of Davis Ex Rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 380 (5th Cir. 2005).

Here, Deputy Ingle asserts that the trial court erred in its factual analysis of qualified immunity regarding excessive force, particularly in light of the videos. The videos depict Norman as a non-compliant, violent, drunk, combative and resistant suspect. The Court need not rely on Norman's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videos. *Scott v. Harris,* 550 U.S. 372, 381 (2007). The Court assigns "greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston,* 636 F.3d 183, 187 (5th Cir.2011). When one party's description of the facts is discredited by the record, we need not take his word for it but should view "the facts in the light depicted by the

1

videotape." *Scott,* 550 U.S. at 380–81. This is clearly the case here. Deputy Ingle asserts that the video evidence corroborates his entitlement to qualified immunity, as a matter of law. *Mullenix v. Luna,* 577 U.S. 7, 19 (2015). Here, where Norman's allegations are clearly false, as shown below in the factual statement and the videos, and where Deputy Ingle did not violate a constitutional right regarding excessive force and where there is a consensus of cases that Deputy Ingle acted reasonably with a drunk, violent and resistant Norman, Ingle should have granted qualified immunity as a matter of law.

"The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine 'to the extent that it turns on an issue of law.'" *Flores v. City of Palacios,* 381 F.3d 391, 393 (5th Cir.2004) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 530 (1985)). Summary judgment should have been granted.

## STATEMENT OF THE ISSUES

1) Whether qualified immunity applies to Deputy Ingle in light of the videos which show Norman to be non-compliant, violent, drunk, combative, dangerous and resistant.

2) Whether Norman was denied medical care and whether he was falsely arrested. As to this second issue and in an abundance of caution, Deputy Ingle fully adopts and incorporates here the briefing on these two issues by Deputy Sutton and will not separately brief them. See DE 28, Sutton's appellate brief, pages 33-34. Deputy Ingle also notes that Norman specifically waived his claims of malicious prosecution, false arrest and First Amendment violations. ROA.846.

# STATEMENT OF THE CASE

## I.    Procedural history.

Evan Norman filed his civil rights lawsuit on March 21, 2023. ROA.1-29. The court dismissed all claims against Harris County and Sheriff Gonzalez on September 5, 2024. ROA.973-978. The trial court also denied the deputies' Motions for Summary Judgment based on qualified immunity on September 5, 2024. ROA.982-987. The court found that there were genuine factual disputes regarding whether Appellee Norman posed an immediate threat to safety, whether he resisted arrest, and whether he was denied immediate medical attention. ROA. 986. The court did not separately analyze each of the Appellants' conduct as to qualified immunity. ROA.982-987. Appellants filed a Notice of Appeal on September 26, 2024 based on qualified immunity. ROA.988-989.

Unrelated to this specific appeal on qualified immunity, the lower court implied in its order that the First and Fifth Amendment claims remain viable. ROA.982-987, district court opinion. They are not. Norman waived his claims of malicious prosecution, false arrest and First Amendment violations.  ROA.846, Plaintiff's response to summary judgment. And as a matter of law, he does not have a Fifth Amendment claim as there is no federal actor. The Fifth Amendment applies only to violations of constitutional rights by the United States or federal actors, and

there are no allegations that the deputies were acting under the authority of the federal government. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000).

## II.     Factual Statement.

Plaintiff Norman is a drunk who admitted in deposition that he frequently drinks until he passes out.  ROA.547, p. 49, lines 13-20; ROA.548, lines 12-15. He is also a mean drunk.

On March 21, 2021, he was once again drunk and passed out at his table[1] in Bombshells bar. ROA.87-88, First Amended Complaint; ROA.538, Ingle body worn camera (BWC), 00:29-32)).   He had seven drinks in two hours. ROA.87-88. Although he says he does not recall what he drank that night, he testified his drink of choice, before and after this incident, is tequila. ROA.546, Norman depo, p. 25, lines 13-17; ROA.550, p. 97, lines 17-21.

The staff asked him to leave.

He would not.

The bar staff called over Deputy Ingle who was working an approved, second job at Bombshells. ROA.560, Ingle Depo, p. 92, lines 19 through p. 93, line 24; ROA.538, Ingle BWC, 0:00-0:53.

---

[1] Norman pled in his complaint that he was passed out and then disputed that in his deposition, saying he was merely asleep at the table. He testified he has passed out from too much to drink while at home. ROA.547, p. 49, lines 13-20; ROA.548, lines 12-15.

At the table, Norman stood up, faced Deputy Ingle and reached for Deputy Ingle's gun belt, which is on Ingle's left side, and Ingle slapped Norman's hand away. ROA. 538, Ingle BWC, 00:29-32.[2] Ingle is left-handed and shoots with his left hand, so his weapon was on his left side where Norman was reaching.

Deputy Ingle grabbed him by the back of the shirt and marched him out of the bar, cursing at Norman, who drunkenly stumbles out the bar door. ROA.538, Ingle BWC, 00:32-49; ROA.562-564, Ingle Depo, p. 95, Line 13 – p. 97, Line 10.

Deputy Ingle got Norman out the door and tells him to "go home, bro." ROA. 538, Ingle BWC. 00:49-00:50. Norman did not drive to the bar, but took a paid lift.

This is the **<u>first time</u>** Ingle tries to walk away from Norman.

Now, Norman got ugly. He started confronting Deputy Ingle with, "Are you going to head bump me?" ROA.538, Ingle BWC, 00:48-:49.

Then Norman added in quick succession, "Do you have a short man complex?" and "I see, you get me and I get you." ROA.538, Ingle BWC, 00:50-53. These remarks are in direct contradiction to the court's opinion and the First Amended Complaint. ROA.983, lower court's opinion;  and ROA.88-89, First Amended Complaint.  At this stage, the complaint clearly contradicts the videos,

---

[2] The software for the body worn camera does not start its sound recording function until a few minutes elapse.

which the lower court did not assess, writing instead that the deputies were irritated. ROA.88, para. 14.

Deputy Ingle does not take the bait, and told Norman, "You can go home or I can put you in jail for public intoxication." ROA.538, Ingle BWC, 00:52-1:00.

This is the **<u>second time</u>** Deputy Ingle tries to get Norman to leave.

Deputy Sutton walked into the camera frame at 1:00.

Deputy Ingle again told Norman, "just go home and have a good night." ROA.538, Ingle BWC, 1:00-09.

This the **<u>third time</u>** Deputy Ingle tried to disengage with Mr. Norman.

Deputy Ingle turned to go, and Norman asks for his "number." ROA.538, Ingle BWC, 1:09-1:14. Deputy Ingle responded, "I will even write it down for you." And Norman responds, "go for it, are you sure you can spell it." ROA.538, Ingle BWC, 1:14-1:21. This is again in contradiction to what the district court noted in its opinion. ROA.983, lower court opinion.

Again, Deputy Ingle doesn't take the bait, steered Deputy Sutton away, and tells Norman, "grab your stuff and have a good night." ROA.538, Ingle BWC.1:14-1:21. Again, this is in direct contrast to the lower court's decision that the deputies were "irritated" with Norman. ROA.983, lower court opinion. The opposite is true, as the videos show.

This is the **<u>fourth time</u>** Deputy Ingle told Norman to go home and tries to disengage.

Norman then charged the officers from behind as they were leaving, and shouts, "he's running away!", apparently referring to Deputy Sutton who did not give Norman his badge number. Deputy Ingle told Norman, "No one is running away. You are going to go home." ROA.538, Ingle BWC, 1:35-38.

This is the **<u>fifth time</u>** Deputy Ingle told Norman to go home and the fifth time he tries to disengage. Less than 2 minutes has passed in this continuous confrontation by Norman.

Deputy Sutton turned and pushed Norman in the shoulders and told him not to come up on him from behind. ROA.538, Ingle BWC, 1:38-1:45. Even Deputy Sutton tried to dis-engage from a drunk and hostile Norman. Norman says, "Fuck you, you pushed me." ROA.538, Ingle BWC, 1:38-1:46. Again this is in direct contrast to the lower court's opinion which notes instead that he deputies verbally abused Norman. ROA.983.

Deputy Ingle took Deputy Sutton by the shoulder, turns him and they both start to walk inside the bar. Deputy Ingle said, "Let's go bro, let's go inside." ROA.538, Ingle BWC, 1:45-1:51; ROA.539, Sutton BWC 00:11-14 (Ingle stepped between Norman and Deputy Sutton).

This is the **<u>sixth time</u>** Deputy Ingle tried to disengage from Norman.

Norman ran up again behind Deputy Sutton, and Sutton told Norman again not to come up on him from behind. ROA.538, Ingle BWC,1:54-1:57; ROA.539, Sutton BWC, 00:21-22. This is the **second time** Sutton tried to disengage with Norman.

Deputy Ingle again told him to "have a good night, brother." ROA.538, Ingle BWC, 1:57-2:01.

This is the **seventh time** Deputy Ingle tries to disengage.

Apparently, Norman is undeterred.

Despite seven attempts to disengage from Norman, the bar video shows he charged at Deputy Ingle from behind and threw his right arm around Ingle's neck, pulled him backward toward the parking lot and began to punch Deputy Ingle in the head and face. ROA.538, Ingle BWC, 1:57-2:01; ROA.542-543, photos of Ingle's facial injuries. Sutton's body worn camera shows that Sutton was in front of Ingle when Norman put Ingle in a headlock and began pulling and punching Deputy Ingle. ROA.538, Sutton BWC, 00:22-32; ROA.540, Bombshells security video, 1:30-1:33. Despite this video evidence, the lower court wrote in its denial of qualified immunity that the deputies were not injured and that the deputies "rushed" Norman and instigated this fight. ROA.982-987.

It takes Ingle, Sutton and another bar security officer – three men in all -- to take Norman to the ground. ROA.540, Bombshells security video, 1:45-1:54; Sutton

sworn statement, ROA.554, Norman continued to resist after being taken to the ground. Sutton BWC 0:49-1:45, 34:00, ROA.734-736; ROA.770-771, and Bombshells video at 1:54-2:52, ROA.737-742.

With Norman on the ground, Deputy Ingle punched him in the face five times. ROA.539, Sutton BWC, 0:37-0:42. Ingle turns Norman's head by the chin, and asks him if he is "done." Ingle's body worn camera was knocked off when Norman attacked him. ROA.540, Bombshells video, 1:40-1:43.

From the time Norman attacked Deputy Ingle to the time Deputy Ingle last touched Plaintiff's head/neck, it was approximately 18 seconds. ROA.540, Bombshells security video, 1:37-1:54; ROA.538, Ingle BWC, 2:01-2:18, and ROA.539, Sutton BWC, 0:29-0:48.

It took at least seven of those seconds to get Norman, who continued to resist, to the ground. ROA.540, Bombshells security video, 1:38-1:45; and ROA.539, Sutton BWC, 0:29-0:37. Deputy Ingle punched Plaintiff for approximately six seconds. ROA.540, Bombshells security video, 1:45-1:51; and ROA.539, Sutton BWC, 0:37-0:42. Deputy Ingle's body was between Plaintiff and Deputy Sutton for five of the six seconds. ROA.540, Bombshells security video, 1:46-1:50 and ROA.539, Sutton BWC 0:37-0:42.

Deputy Ingle puts his hand on Plaintiff's neck for four seconds. ROA.539, Sutton BWC, 0:45-0:49. Plaintiff continued to resist, and it took almost another

minute to handcuff Plaintiff. ROA.539, Sutton BWC, 0:49-1:45, and ROA. 540, Bombshells BWC, 1:54-2:52.

It is important to note that Plaintiff's First Amended Complaint falsely alleges that Deputy Ingle rushed Norman (ROA.89, para. 15); *Garza v. Briones,* 943 F.3d 740, 744 (5th Cir. 2019)(plaintiff's version of facts not to be accepted when "blatantly contradicted and utterly discredited by video recordings"). The body cameras and the Bombshell video shows the opposite. Norman rushed both Sutton and Ingle, and attacked Ingle – not as he pled in his First Amended Complaint.

**And** Norman was the **<u>first</u>** to hit anyone that night. ROA.538, Ingle BWC, 1:57-2:01. Norman also falsely alleges Ingle was not injured (ROA.89, para. 16); ROA.542-543, photos of Ingle's injuries.

Norman, even though he testified that he saw the video, denied he put Deputy Ingle in a headlock, and denied he hit him because he had his notebook in his hand. "[W]hy would I do that?," he testifies. ROA.549, Norman depo, p. 60, lines 10-16.

Except that he did. *Scott,* 550 U.S. at 380; *Garza,* 943 F.3d at 744 (plaintiff's version of facts not to be accepted when "blatantly contradicted and utterly discredited by video recordings").

The video clearly showed Norman initiated the attack and had the deputy in a headlock with his right arm and was punching him in the face with his left hand. There was no notebook in Norman's hand when he attacks and punches the deputy.

You can see it fall to the pavement as Norman punches Ingel. ROA.540, Bombshells video, 00:22-32.

Sutton immediately called for EMS. Norman stays face down for 11 minutes until Sutton gets him to agree to calm down. He is placed sitting up next to a pillar. Norman initially refused to go to hospital, but he is taken anyway. ROA.597-600, Bombshell incident report.

Norman complains of a broken nose, facial paralysis, eye socket damage, bruising, lost wages and emotional damage.

## SUMMARY OF THE ARGUMENT

Deputy Ingle is entitled to summary judgment and qualified immunity. There are no material facts otherwise. Deputy Ingle did not use excessive force, did not violate Norman's rights and there is no clear consensus of cases otherwise. The cases Norman relied upon in his summary judgment response are either not precedent or readily distinguished. Mr. Norman is a violent drunk who attacked both deputies, as the videos show and as they directly trump and contradict his allegations.

## ANALYSIS.

### I.    Standard of review for qualified immunity.

In a qualified immunity case, the ordinary burden of proof is "alter[ed]." *Solis v. Serrett*, 31 F.4th 975, 980 (5th Cir. 2022). All a defendant must do is plead the defense, then the plaintiff must show the "allegedly wrongful conduct violated

clearly established law." *Id.* (quoted case omitted). As this Court recently reminded, courts do **"**not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Terrell v. Allgrunn,* ___ F.4th ___, 2024 WL 3948595, at *3 (5th Cir. Aug. 27, 2024) (quoted case omitted). In other words, qualified immunity shifts the summary judgment burden to Plaintiff to show the defense is not available. *Joseph v. Bartlett*, 981 F.3d 319, 329-330 (5th Cir. 2020). Plaintiff must establish that the allegedly wrongful conduct violated clearly established law and there is a genuine issue of material fact as to the reasonableness of the conduct. *King v. Handorf*, 821 F.3d 650, 653-654 (5th Cir. 2016). See also *Edwards v. Oliver*, 31 F.4th 925, 928-929 (5th Cir. 2022).

Also, both prongs do not need to be shown. *Ramirez v. Escajeda*, 44 F.4th 287, 291–94 (5th Cir. 2022)(Fifth Circuit grants qualified immunity in an excessive force case solely on clearly established prong, noting that the other prong was not challenged). Here, especially in light of the videos, not only is it not clearly established and there is no constitutional violation, and there also are no genuine issues of material facts.

## II.   Standard of review for summary judgment.

This Court reviews summary judgment denials *de novo. Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018). When a party moves for summary judgment on an issue where that party bears the ultimate burden of proof, it must

establish a prima facie case with admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (quoting *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000)).

This Court reviews the evidence in the light most favorable to the nonmoving party, *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006), but "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Factual allegations arising out of events captured on video are viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).  Here the video shows a confrontational and violent Norman who continued to resist after officers and a security guard took him to the ground – all after officers tried seven times to walk away from Norman.   In other words, the video trumps Norman's false allegations that he did not confront the deputies, did not punch the deputies, and did not resist arrest. *Scott,* 550 U.S. at 380; *Garza,*  943 F.3d at 744 (plaintiff's version of facts not to be accepted when "blatantly contradicted and utterly discredited by video recordings").

**III.    District Court did not evaluate the videos.**

There is no dispute of material fact regarding the incident at issue because there are video recordings of the entire incident. *Scott v. Harris*, 550 U.S. 372, 380 (2007) and ROA.731-733, 734-736, 737-742, and 770-771. The court does not seem to rely on any of this video in its opinion, but rather on the allegations in the complaint. "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (quoting *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000)). Importantly, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Factual allegations captured on video are viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

Court writes that the deputies knew the bar overserved, and that the two deputies were "irritated" when Norman asked for their badge numbers. ROA. 983, lower court's opinion; ROA.88, First Amended Complaint, paras. 11 and 14. Plaintiff has presented no evidence of "overservice" or that the deputies knew of this, plaintiff does not address it in his reply, and video shows Norman got Deputy

Ingle's badge number,  Ingle even wrote it down for Norman as Norman continued to insult him. ROA.538, Ingle BWC, 1:09-1:14. Deputy Ingle responded, "I will even write it down for you." And Norman responds, "go for it, are you sure you can spell it."  ROA.538, Ingle BWC, 1:14-1:21.

Next, this is not the motion to dismiss stage. It is summary judgment. At summary judgment, Plaintiff must move past mere allegations and offer proof. *Brown*, 337 F.3d at 541.   In fact, Deputy Ingle worked only once or twice at this bar, and was never asked about these allegations. ROA.395, Ingle deposition.

The court also writes that the officers "verbally abused" him.  The opposite is true, and this was pointed out above and in the summary judgment.  The court also fails to mention that the deputies tried numerous times to walk away from Norman.  Norman rushed Sutton twice, and then attacked Deputy Ingle, grabbing Ingle from behind, pulling him toward the parking lot and punching the deputy in the face.  The court also erroneously writes that the deputies did not sustain injuries.  Deputy Ingle sustained injuries, although minor,  to his face, as was pointed out in the summary judgment.  ROA.538, Ingle BWC, 1:57-2:01; ROA.542-543, photos of Ingle's facial injuries.

The lower court then wrote that it agrees there is no assault claim because of the Texas Tort Claims Act.  The court added, "However, this determination is not based on the events at the scene but on the basis that Norman asserts that his First

and Fifth Amendment rights were violated and specific instances of alleged misconduct that, if proven, establishes a violation of Norman's right to be free from the use of excessive force during the course of an arrest." ROA. 987, lower court's opinion. However, Norman waived his First Amendment Claim, and the Fifth Amendment only applies to the federal government, which was pointed out to the court. He also waived his false arrest and malicious prosecution claim. ROA. 846, Norman's summary judgment reply.

## ARGUMENT

### I. Analysis.

### A. The lower court did not assess the video evidence that directly contradicts material parts of Norman's allegations.

The lower court assiduously avoided the undisputed video evidence showing that Deputy Ingle de-escalated seven times and Deputy Sutton twice by turning their backs and walking away, and that Norman in fact attacked Deputy Ingle, continued to resist after Deputy Ingle's use of force ended. Qualified immunity should have been granted.

The trial court also erred by failing to analyze the application of qualified immunity as to each deputy. *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022). The court's order (ROA.982-987), simply lumps the Appellants together and does not differentiate their actions from one another. ROA.986. When claims are brought against multiple officers in connection with a single arrest, the court "must analyze

the officers' actions separately." *Buehler v. Dear*, 27 F.4th 969, 985 (5th Cir. 2022) (quoting *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018)).

### B.     Norman has not shown a violation of a constitutional right.

One prong of the QI analysis is the plaintiff must show a violation of a constitutional amendment.  Here, the court only advanced the excessive force complaint; the First Amendment complaint has been waived and there is no Fifth Amendment violation as a matter of law on these facts. ROA.846, Norman's summary judgment response.

"The constitutional provision governing the claims against [Officer Ingle] is the Fourth Amendment, which protects the right to be free from excessive force during a seizure." *Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020). Whether a use of force is excessive and therefore a constitutional violation depends on whether there was "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Ontiveros v. City of Rosenberg,* 564 F.3d 379, 382 (5th Cir. 2009)). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). "Claims of excessive force are fact-intensive; whether the force used was 'clearly excessive' and 'clearly

unreasonable' depends on 'the facts and circumstances of each particular case.' "

*Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Graham*, 490 U.S. at 396).

### C.     The amount of force used was not excessive or unreasonable.

Under the first prong, injury, Defendant Ingle does not challenge whether Norman suffered an injury after Norman punched Ingle and Norman resisted arrest. The issue is whether the amount of force used was clearly excessive and unreasonable. It was not excessive or unreasonable.

Courts generally consider factors two and three factors together, as "officers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.' *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir.2009)(quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)).

This Court must also weigh the *Graham* factors to determine whether the force used is "excessive" or "unreasonable." *Deville,* 567 F.3d at 167 (citing *Graham,* 490 U.S. at 396). These factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight" with the recognition that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham,* at 396-97 (citation omitted). "The test of reasonableness under the Fourth Amendment is not capable of ... mechanical application," but instead "requires careful attention" to each case's facts. *Graham,* at 396 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)) (alteration and internal quotation marks omitted). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of ... officials, giving them fair leeway for enforcing the law in the community's protection." *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176, (1949)) (internal quotation marks omitted). "[A]t the end of the day, the touchstone of our inquiry is simply the reasonableness of the force employed." *Buehler*, 27 F.4th at 981.

Relatedly, this Court has found that an officer can assume a suspect is drunk based on his current knowledge.

> Given the smell of alcohol, Officer Rich's knowledge that Gibson had shared a pitcher of beer with Sandra, Gibson's belligerence, and the cumulative circumstances of the night in question, Officer Rich acted as a reasonable officer *could* have acted in arresting Gibson for public intoxication. This Court is not willing to second guess the officer on the beat who must act on the spur of the moment if that officer's action can be classified as "arguably reasonable."

*Gibson v. Rich*, 44 F.3d 274, 277–78 (5th Cir. 1995).

In this case, based on the videos and the testimony above, Norman was drunk, confrontational and violent, attacking both deputies, and ultimately punching Ingle.

### D.   The severity of the crime at issue here weighs in favor of Officer Ingle.

This *Graham f*actor weighs in favor of Officer Ingle. Norman was charged with assault of a peace officer, although it was ultimately dismissed by DA.  ROA. 768-769, charging instrument. The Fifth Circuit has found that assault of a police officer is a "serious crime." *Johnson v. City of San Antonio*, No. 22-50196, 2023 WL 3019686, at *11 (5th Cir. Apr. 20, 2023).  In *Johnson,* a teenager was accused of assaulting a police officer who was called to a *quinceanera* gone violent.  She in turn accused the officer of  assaulting her.  Qualified immunity was granted; although this case is not precedential because it is unpublished, the facts are important:  the officers were dealing with drunk, violent and resisting people.

### E.   Norman posed an immediate threat to the safety of the officers and others weighs in favor of Officer Ingle and Sutton.

This second *Graham* factor also weighs in favor of Officer Ingle.  Here, the video refutes Norman's claims that he was attacked. In fact, Norman lied.

Norman attacked Ingle even after Ingle tried to walk away seven times.  It is not unreasonable to think that Norman posed an immediate threat to the officers, with his angry confrontational behavior and his strikes to Deputy Ingle's head and his continued resistance.

There is no "*de minimis* resistance exception" to the Fourth Amendment. No, plain and simple: When a person resists arrest—say, by swinging his arms in the officer's direction, balling up, and refusing to comply with verbal commands—the officers can use the amount of force necessary to ensure submission. A *de minimus* rule—say, that the arrestee's arm swing needs to make direct contact with the officer, or that the officers need to let the suspect resist for longer than thirty seconds before taking action (one minute? Two? *Three* ?),—does not provide the necessary guidance for the police, and it risks the safety of all involved. Plus, this *de minimus* "rule" does not align with Fifth Circuit or Supreme Court caselaw. The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments [ ] in circumstances that are tense, uncertain, and rapidly evolving," *Graham,* 490 U.S. at 396–97.

## F.    Norman's resistance weighs in favor of Deputy Ingle.

The plaintiff must also show that the defendant's conduct was objectively unreasonable. *Pearson v. Callahan*, 555 U.S. 223, 243 (2009). One look at the bar video and it was not unreasonable. "An official's actions are "objectively reasonable unless *all reasonable officials* in the defendant's circumstances would have then known that the conduct violated the Constitution." G*ates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir. 2008). "If reasonable public officials could differ on the lawfulness of the official's actions, the official is entitled

to qualified immunity." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In short, Defendants would be entitled to qualified immunity if their conduct was objectively reasonable even if such conduct violated Norman's constitutional rights. See *Fraire v. City of Arlington,* 957 F.2d 1268, 1273 (5th Cir. 1992).

Resisting arrest is considered one of the most "salient" factors. *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022). The video makes clear that it took three officers to subdue Norman.  After Norman punched Deputy Ingle, a struggle ensued. A plaintiff's struggling against an officer upon contact can reasonably be viewed as a form of resistance. *Solis v. Serrett*, 31 F.4th 975, 982–83 (5th Cir. 2022).  In *Solis,* this Court reversed the lower court and granted qualified immunity. It is instructive.

> Here, Solis was generally hostile to the officers from the beginning of the traffic stop. She emphasized that she and Robinson were near their home, argued with the officers, repeatedly implied that Robinson was pulled over only because of his race, pulled away when Serrett asked for her phone, and stepped back and exclaimed "Drop it? Excuse me!" when Serrett told her she was being arrested. This court has also acknowledged that "a suspect who backs away from the arresting officers is actively resisting arrest—albeit mildly." *Buehler*, 27 F.4th at 984 (cleaned up). Solis also seemed to struggle against the officers as they grabbed her arms, which viewed from the officers' perspective could be "another form of resistance." *Id.* Accordingly, it may have been reasonable for the officers to perceive Solis as actively resisting arrest, and this factor weighs in the officers' favor.

*Solis,* 31 F.4th at 982–83.

Jerking motions, too, can be reasonably seen as an attempt to break free of an officer's grasp. And "the great weight of Texas authority indicates that pulling out

of an officer's grasp is sufficient to constitute resisting arrest" under Texas law. *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013)(tasing case). Accordingly, it was reasonable for Deputy Ingle to perceive Norman was actively resisting arrest.

### G.     The speed with which Deputy Ingle resorted to force was in direct response to the speed at which Norman attacked him.

The timing of this event is set up in the fact section. Although not listed as a *Graham* factor, this Court also considers the speed with which the officer resorts to force. See, e.g., *Trammell v. Fruge*, 868 F.3d 332, 342 (5th Cir. 2017).  An officer 'must use force with measured and ascending actions that correspond to a suspect's escalating verbal and physical resistance. *Solis,* 31 F.4th at 983, citing to  *Joseph*, 981 F.3d at 332-33).

Deputy Ingle took "measured and ascending actions", trying seven times to walk away from Norman; Sutton twice.  Here, this Court should view the evidence in the light shown by the videos, which show all the times both officers tried to walk away from Norman who after verbally insulting the officers, tried to come up behind Deputy Sutton and then grabbing Deputy Ingle from behind and punching him in the head.  And then lying about it in deposition.

Taking these considerations together, Deputy Ingle's actions were not so objectively unreasonable as to violate Norman's constitutional rights. As previously noted, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight." *Graham*, 490 U.S. at 396. "[O]ur focus is on the officers' reasonable perception of the events at issue, as they happened, without the aid of hindsight, multiple viewing angles, slow motion, or the ability to pause, rewind, and zoom." *Tucker*, 998 F.3d at 176. Against the backdrop of an angry, violent and insulting drunk, it was reasonable of Deputy Ingle to believe that force would be necessary to subdue Norman, considering his: (1) vocal and physical interjections; (2) comments and tone toward both officers (i.e., his yelling, "Fuck you, you pushed me!" (3) grabbing and beating Deputy Ingle in the head. Thus, Deputy Ingle did not violate Norman's constitutional right to be free from excessive force.

### H.    Even had Deputy Ingle violated a statutory or constitutional right, the right was not clearly established at the time of the challenged conduct.

Even assuming Norman could show Deputy Ingle committed a constitutional violation, Deputy Ingle is nonetheless entitled to qualified immunity under the second prong of the qualified-immunity analysis. As stated above, the second prong requires that we determine whether the use of force "violated clearly established statutory or constitutional rights of which a reasonable officer would have known." *Craig v. Martin*, 49 F.4th 404, 417 (5th Cir. 2022)(quoting *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008)) (internal quotation marks and alteration omitted). "In excessive-force cases, 'police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue.' " *Garcia v. Blevins*,

957 F.3d 596, 600-01 (5th Cir. 2020) (quoting *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019)) (emphasis in original).

Norman has failed to provide controlling precedent – or any precedent at all – showing that Deputy Ingle's particular conduct violated a clearly established right. "Although the plaintiffs need not point to a factually identical case to demonstrate that the law is clearly established, they nonetheless must provide some controlling precedent that 'squarely governs the specific facts at issue.' " *Craig*, 49 F.4th at 419 (quoting *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019)) (emphasis added). The reason for requiring highly similar factual scenarios is that the Fourth Amendment's reasonableness inquiry is highly fact-dependent. "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes,* 138 S. Ct. 1148, 1153 (2018) (internal quotation marks omitted). Because the analysis differs depending on the particular mix of circumstances confronting officers, all of the material facts need to be functionally identical before the officers have fair warning that their conduct is illegal. *Rivas-Villegas,* 595 U.S. 1, 6 (2021) ("[S]pecificity is especially important in the Fourth Amendment context ...").

## I.    Cases cited by Norman do not help him.

The cases Norman cites to in his response do not help him.

First, *In Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 342
(5th Cir. 2020) is readily distinguished.

There, the officers killed Joseph. The one officer struck, punched, and tased
Joseph, while another repeatedly kicked and punched him—twenty-six blunt-force
strikes and two rounds of tasing in total. All the while, Joseph was facedown in the
fetal position, not suspected of committing any crime, not posing a threat to officers
or others, and not actively resisting arrest. This Court found that the officers did not
respond to Joseph with measured and ascending force that corresponded to his
resistance. In our case, Norman was punched but not kicked, struck or tased. He
did pose a threat to the officers, tried to attack Sutton, grabbed and hit Ingle – after
both officers tried repeatedly to walk away.

*Ramirez* is distinguishable as well. *Ramirez v. Martinez*, 716 F.3d 369, 378
(5th Cir. 2013). This court found that while Ramirez pulled his arm out of the
officer's grasp, there was a genuine issue of material fact as to any subsequent
resistance after Ramirez was tased and handcuffed. In our case, Norman attacked
Ingle, punched him and continued to resist. He was not handcuffed until he
stopped resisting.

In *Newman v. Guedry*, 703 F.3d 757, 759 (5th Cir. 2012), qualified immunity
was denied when the officer used his taser 16 times and nightstick 13 times during
an August 2007 traffic stop without any physical skill, negotiations or commands.

This force was found objectively unreasonable in light of clearly established law. *Newman,* 703 F.3d at 759–60, 763–64.  These are not the facts of our case.

Moreover, this court's "qualified immunity jurisprudence is filled with cases recognizing the need for officers to use reasonable force to subdue and handcuff suspects who strike them or are otherwise resisting." *Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir. 2015). And the videos show Norman attacking and punching Deputy Ingle, which any reasonable officer could reasonably interpret as an assault or attempt to strike. So, Norman has not overcome Deputy Ingle's qualified-immunity defense. The district court must be reversed.

## J.    Deputy Ingle is qualifiedly immune.

Based on the summary judgment record before us, Norman has failed to show that no reasonable officer could have acted as Officer Ingle did when: (1) both officers tried repeatedly to walk away from the drunk and confrontational Norman; and (2) Norman repeatedly approached both officers and saying "Fuck you, you pushed me! and charging after Deputy Sutton after inexplicably shouting "He's getting away!" And, after Ingle's use of force ended, Plaintiff was clearly still resisting as Deputy Sutton tried to handcuff him. Sutton 0:49-1:45, 34:00, and Bombshells video.

Under these circumstances, the officers were not "plainly incompetent" and there is no evidence that they knowingly violated the law. The district court, then, was wrong to deny both deputies qualified immunity.

### K.     Plaintiff's cases do not support denial of qualified immunity.

It is plaintiff's burden to defeat qualified immunity.  Defendant Ingle could find no cases where an officer tried seven times to walk away from a drunk and violent Plaintiff.  But in *Tucker v. City of Shreveport*, 998 F.3d 165, 180-81 (5th Cir. 2021), the Fifth Circuit found the lower court erred in not granting summary judgment based on qualified immunity related to a takedown, like in the instant case:

> Given these uncertainties, and Tucker's superior height, particularly relative to McIntire, who apparently precipitated the officers' efforts to get Tucker to the ground, we are convinced that the district court erred in its qualified immunity assessment of the "takedown" aspect of Tucker's claim. Specifically, we are not convinced that applicable jurisprudence provided fair warning to Cisco and McIntire, as of November 30, 2016, that pulling Tucker to the ground under the circumstances and in the manner that occurred here would necessarily violate his Fourth Amendment rights against unreasonable seizure.
>
> Rather, even construed in Tucker's favor for summary judgment purposes, the foregoing facts and circumstances, when viewed in their entirety, created a scenario sufficiently "tense, uncertain, and rapidly evolving" to place the officers' takedown of Tucker, even if mistaken, within the protected "hazy border between excessive and acceptable force," established by then-existing Fourth Amendment excessive force jurisprudence. Consequently, it is immaterial whether, as the dissent urges, the video footage "does not blatantly contradict" Tucker's assertion that, immediately prior to the takedown, he was putting his hands behind his back in compliance with Cisco's orders and did not pull away prior to being taken to the ground. Accordingly, we find the district court erred in not granting summary judgment in favor of

Defendant Officers, on grounds of qualified immunity, relative to the takedown.

*Tucker,* 998 F.3d at 180–81 (emphasis added).

Thus, in addition to the cases cited in the original summary judgment, *Tucker* which came out the same year as the events in this case, gives this court the existing precedent that grants Deputy Ingle qualified immunity. And even if this court finds contradictory cases, deference as a matter of law belongs to Ingle.

> We have repeatedly told courts ... not to define clearly established law at a high level of generality." … The dispositive question is "whether the violative nature of *particular* conduct is clearly established." … (emphasis added). This inquiry " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (*per curiam* ) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." 533 U.S., at 205.

*Mullenix v. Luna,* 577 U.S. 7, 12 (2015).

In this case, Norman relies on *Joseph, Doss, Ramirez, Newman, Deville and Goodson*. They do not help him. See generally, Plaintiff's reply to summary judgment, ROA.816-817.

In *Newman v. Guedry*, 703 F.3d 757, 759 (5th Cir. 2012), qualified immunity was denied when the officer used his taser 16 times and nightstick 13 times during an August 2007 traffic stop without any physical skill, negotiations or commands. This force was found objectively unreasonable in light of clearly established law.

*Newman,* 703 F.3d at 759–60, 763–64.  These are not the facts of our case.  Both deputies tried to walk away from Norman, using the physical skill, negotiations and commands noted in *Newman.*  Norman attacked Deputy Ingle.  What Ingle did was objectively reasonable.

*Doss* is not precedential as an unpublished case. Regardless, in *Doss* the issue was whether a gun was brandished, where the plaintiff's hands were and whether the plaintiff resisted.  Doss argued that the officers – unprovoked – attacked him.  <u>*Doss v. Helpenstell*</u>, 626 F. App'x 453, 458 (5th Cir. 2015).  In our case, the videos show Norman attacked the officers after they tried repeatedly to disengage.  And there was no issue of a gun in our case.  This case is not factually helpful to Norman.

In *Deville*, again, it is not factually similar for qualified immunity analysis.  *Deville v. Marcantel*, 567 F.3d 156, 167–68 (5th Cir. 2009).  There, the officers broke a car window and forcibly removed the driver for refusing to get out of the car following a minor traffic violation, when there was no indication that the driver was a flight risk or a danger to the officers. Interestingly the Court that the plaintiff engaged in only "passive" resistance. These are not our facts, and Norman was not passive and he was a danger to the officers; he attacked Ingle and tried to rush Sutton from behind.  And he was not punched after handcuffing because Norman could not be cuffed until he stopped resisting.

In *Goodson*, the plaintiff was pulled over and tussled with officers. His shoulder was broken. The Fifth Circuit found the officers lacked a reasonable suspicion to detain or frisk him and he was not fleeing. A fact issue therefore exists as to the objective reasonableness of the force used. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). This case is readily distinguishable. Norman hit Ingle and resisted arrest. The *Griggs* case, which is the closest case to our facts distinguished *Goodson* and *Ramirez*, relied upon by Norman. *Griggs* is cited in Ingle's summary judgment. ROA.531.

> Griggs points to two of our cases that he argues are analogous. First, he relies on *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000), in which the court found that tackling a suspect who yanked away from an arresting officer and fled may have amounted to unreasonable force. *Goodson* is inapposite, however, because the case turned not on whether the force was excessive, but on whether the force was justified *at all* because fact issues remained as to whether the officer had reasonable suspicion to initiate the stop. *Id.*; *see also Poole*, 691 F.3d at 632 (distinguishing *Goodson* on similar grounds).

> Griggs next points us to *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013). There, a suspect pulled away from an officer who was attempting to make an arrest, and the officer immediately used a Taser on the suspect and tackled him to the ground. *Id.* at 372–73. After the suspect had been restrained with handcuffs, the officer tased him again. *Id.* The court found that the officer was not entitled to qualified immunity on the plaintiff's excessive force claims. *Id.* at 377–80. Although Officer Martinez's quick use of the Taser was arguably similar to Officer Brewer's quick use of the takedown maneuver, Martinez's decision to continue to tase Ramirez after he was already handcuffed was far more unreasonable than Officer Brewer's conduct. Even so, the *Martinez* court did not find that the quick use of a Taser on an arrestee who is resisting arrest amounts to a clearly established

violation, so that case provides Griggs with little persuasive support. *Id.* at 378 (citing *Poole*, 691 F.3d at 626).

Thus we conclude that Officer Brewer's conduct in executing the initial takedown was not constitutionally unreasonable in the light of clearly established law. Or, stated differently, our precedent does not clearly establish that this "takedown" maneuver—against a **drunken, erratic suspect who is resisting arrest**—is constitutionally unreasonable. *See Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.") (citations and quotations omitted). Brewer's actions may not have been as restrained as we would like to expect from model police conduct, but qualified immunity "protect[s] officers from the sometimes hazy border between excessive and acceptable force." *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citations and quotations omitted), *overruled in part on other grounds*, *Pearson*, 555 U.S. at 227, 129 S.Ct. 808; *see also Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

*Griggs v. Brewer*, 841 F.3d 308, 314–15 (5th Cir. 2016)(emphasis added).

Finally, this Court found that the punching a "drunken and erratic" Griggs several times while on the ground and while the officer tried to handcuff him amounted was not excessive force – just like in our instant case.

In assessing Brewer's conduct under the defense of qualified immunity, we need not determine whether an actual constitutional violation occurred. The question for us is whether Brewer's conduct was unreasonable in the light of clearly established law. In this instance,

> Griggs points to no authority establishing that it was unreasonable for an officer to use non-deadly punches to gain control of the arms of a drunken, actively resisting suspect. Griggs actively resisted and refused to comply with the officers' clear and audible commands. Although the officers might have used less forceful conduct, there was no settled authority to put Brewer on notice that his use of force in such circumstances violated Griggs's constitutional rights. …

> We therefore hold that Officer Brewer is entitled to qualified immunity as to the claims stemming from his attempts to handcuff Griggs while Griggs was on the ground.

*Griggs,*  841 F.3d at 315.

Deputy Ingle  should be granted qualified immunity and this case dismissed.

### L.     Still other cases show a clear consensus that Deputy Ingle was reasonable.

In *Hunter v. City of Houston,* 564 F. Supp. 3d 517, 524–27 (S.D. Tex. 2021),[3] the court found that the force used by the officer was reasonable, even when the underlying crime wasn't severe and that the plaintiff initially did not pose an immediate threat.  Like this case, the court relied on the bodycam video. "Still, the bodycam video plainly shows that he resisted arrest. Officers may use force to effect an arrest where the suspect actively resists" *Hunter,* 564 F. Supp. 3d at 524-25.

The district court added that the amount of force used here to wrestle Hunter to the ground was far less than that used in other lawful instances. For example, see *Cadena v. Ray*, 728 F. App'x 293, 296–97 (5th Cir. 2018, *per curiam*) (reasonable

---

[3] Although district court cases are not precedential, they are instructive when the facts are similar and Fifth Circuit case law is relied upon.

force found where police officers tackled and tased arrestee when he resisted being arrested for public intoxication); *Hogan v. Cunningham*, 722 F.3d 725, 733–34 (5th Cir. 2013) (reasonable force found where police officers tackled arrestee trying to close his front door on them).

Thus, the district court found that in the 2021 *Hunter* case, in the timeframe of this case, the plaintiff failed to carry his burden to show that the officer violated a clearly established right in the analysis of qualified immunity. "It certainly can't be said on these facts that 'every reasonable officer would have understood' that the pertinent actions were unlawful. *Hunter,* 564 F. Supp. 3d at, 526-527, quoting *Mullenix v. Luna*, 577 US 7, 11 (2015). This being so, even if "officers of reasonable competence" could disagree on whether the force used here was excessive, qualified immunity applies. *Tucker*, 998 F.3d at 172, quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005)("If officers of reasonable competence <u>could disagree</u> as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.")(emphasis added.) "Summary judgment [based on qualified immunity] is appropriate on this claim" the court ruled. *Hunter*, 564 F. Supp. 3d at 527.

**M.**  **Plaintiff's expert relies on false "facts" and the opinion cannot be relied upon at this stage.**

To the extent Norman may want to rely on his expert in his brief, there are clear problems. Rule 702 governs the admissibility of expert testimony, providing that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) <u>the testimony is based on sufficient facts or data;</u>
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702 (emphasis added).

Rule 702 was amended to incorporate the principles first articulated by the United States Supreme Court in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* FED. R. EVID. 702, Adv. Comm. Notes (2000). Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997).

Following *Daubert* and its progeny, trial courts act as gatekeepers, overseeing the admission of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Trial courts must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. District courts have broad latitude in weighing the reliability of expert testimony. *See Kumho Tire Co.*, 526 U.S. at 152.

Here, Plaintiff's expert did not view the Bombshell video which shows Norman attacking and punching Deputy Ingle, and Howse falsely opines that Ingle was the aggressor (ROA.633-634, Howse report, pages 8-9). Expert Howse opines that there is no evidence that Norman assaulted Deputy Ingle, which is false; that Norman did not resist or present any threat to the deputies, again contradicting the Bombshells video that shows Norman grabbing Deputy Ingle from behind and punching Ingle in the face, and that it took three officers to take Norman to the ground. In fact, Expert Howse says Norman displayed "no aggression toward the deputies other than holding a pen and trying to write their names and  badge numbers." Again, this is false. ROA.633-634. Given this false premise, Howse's opinion is unsupported and under Rule 702 and Daubert, it should be struck.

Contrast Plaintiff's expert report with Defendants' expert who did view the Bombshell video and opined that the force used was necessary. ROA.573-596.

## CONCLUSION

The videos in this case are clear and dispositive. Norman was drunk, erratic and violent. The force used to bring him under control, especially in light of *Griggs* and *Tucker*, and in light of the distinguished cases relied upon by Norman. Deputy Ingle did not violate Norman's constitutional rights and the clear consensus of cases support Ingle. Qualified immunity should be granted.

*/s/ Suzanne Bradley*
**SUZANNE BRADLEY**

## **CERTIFICATE OF SERVICE**

I certify that on December 23, 2024, I filed a true and correct copy of the foregoing brief via the Court's CM/ECF system, which will automatically serve a copy on all parties' counsel.

Appellees-Mr. Norman's Counsel
Randall L. Kallinen
Texas Bar No. 00790995
AttorneyKallinen@aol.com
Alexander C. Johnson
Texas Bar No. 24123583
Alex@acj.legal
511 Broadway
Houston, TX 77012

Appellants-Defendant Christoper J. Sutton
Frank J. Ford
Assistant County Attorney
Federal ID No. 565385
State Bar No. 24012642
1019 Congress, Floor
Houston, Texas 77002
Telephone:  (832) 570-7582
Ford.Frank@harriscountytx.gov
Susannah Mitcham
Assistant County Attorney
State Bar No. 24107219
Fed Bar No. 3640160
Tel: (713) 274-5383 (direct)
Susannah.Mitcham@harriscountytx.gov


*/s/  Suzanne Bradley*
**SUZANNE BRADLEY**
Senior Assistant County Attorney

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limit of Fifth Circuit Rule 32.2 and Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 10,813.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, in Times New Roman 14-point typeface, except for footnotes, which are in Times New Roman 12-point typeface. Case names are italicized or underlined.

*/s/ Suzanne Bradley*
**SUZANNE BRADLEY**
Senior Assistant County Attorney