No. 24-20431

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

EVAN NORMAN,

Plaintiff-Appellee,

*versus*

LEE INGLE; CHRISTOPHER SUTTON,

Defendants-Appellants.

On Appeal from the United States District Court
for the Southern District of Texas
Civil Action No. 4:23-cv-1042

RESPONSE BRIEF OF APPELLEE EVAN NORMAN

*Submitted by*:
Randall L. Kallinen & Alexander C. Johnson
Kallinen Law PLLC
511 Broadway Street
Houston, Texas 77102
Telephone: 713.320.3785
**Attorneys for Appellant**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellants: | Counsel for Appellant: |
|---|---|
| Lee Ingle | Suzanne Bradley<br>Harris County Attorney's Office<br>Houston, Texas |
| Christopher Sutton | Francis Ford & Susannah Mitcham<br>Harris County Attorney's Office<br>Houston, Texas |

| Appellee: | Counsel for Appellees: |
|---|---|
| Evan Norman | Randall Kallinen & Alexander Johnson<br>Kallinen Law PLLC, Houston, Texas |

| Trial Defendants: | Counsel for Trial Defendants: |
|---|---|
| Harris County<br>Sheriff Ed Gonzalez | Gregory Burnett & James Butt<br>Harris County Attorney's Office<br>Houston, Texas |

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellant**

i

## Statement Regarding Oral Argument

Appellee does not believe that oral argument is necessary for this Court to dismiss this appeal or affirm the district court's opinion. As Appellee will explain herein, this Court does not have jurisdiction over this interlocutory appeal, which is purely factual in nature. Even if the Court did have jurisdiction, it could affirm the district court for the reasons provided in the district court's opinion, and for the reasons provided herein. Moreover, only Appellant Ingle moves for oral argument, while Appellant Sutton agrees that it is unnecessary here. However, Appellee would gladly participate in oral argument if the Court finds it necessary.

# TABLE OF CONTENTS

Certificate of Interested Persons                                    i

Statement Regarding Oral Argument                            ii

Table of Contents                                                          iii

Table of Citations                                                         v

Jurisdictional Statement                                               1

Statement of the Issues                                                 2

Statement of the Case                                                  3

**Standard of Review**                                                 3

Summary of the Argument                                            4

Argument                                                                      5

   1. **This Court does not have interlocutory appellate jurisdiction over this case because the district court made its determination on an explicitly factual basis.**                                              6

   2. **The district court was correct to hold that a reasonable jury could find each Appellant liable for violations of Mr. Norman's constitutional rights.**                                                           9

      2.1.    *Qualified immunity standard*                        12

      2.2.    *Excessive force and bystander liability*          13

      2.3.    *Medical Care*                                            19

      2.4.    *Qualified immunity is a countertextual common law doctrine that should no longer exist.*              19

Conclusion                                                                   21

Certificate of Service                                                   23

Certificate of Compliance                                          23

# TABLE OF CITATIONS

## CASES

*Abraham v. Raso*,

183 F.3d 279 (3d Cir. 1999) ...................................................... 4

*Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242 (1986) ................................................................. 3

*Celotex Corp. v Catrett*,

477 U.S. 317 (1986) ................................................................. 3

*Connors v. Graves*,

538 F.3d 373 (5th Cir. 2008) .................................................... 3

*Cooper v. Brown*,

844 F.3d 517 (5th Cir. 2016) .................................................. 13

*Deville v. Marcantel*,

567 F.3d 156 (5th Cir. 2009) ........................................... 17, 18

*Doss v. Helpenstell*,

626 Fed. Appx. 453 (5th Cir. 2015) ................................. 17, 18

*Gooden v. Howard County, Md.*,

954 F.2d 960 (4th Cir. 1992) ................................................... 4

*Goodson v. City of Corpus Christi*,

202 F.3d 730 (5th Cir. 2000) ........................................... 17, 19

*Harlow v. Fitzgerald*,

457 U.S. 800 (1982) ............................................................... 12

*Hoggard v. Rhodes*,

    141 S. Ct. 2421 (2021) ........................................................... 20

*Johnson v. Jones*,

    515 U.S. 304 (1995) ........................................................... 6, 7

*Joseph v. Bartlett*,

    981 F.3d 319 (5th Cir. 2020) ...................................... 12, 13, 17

*Maldonado v. Rodriguez*,

    932 F.3d 388 (5th Cir. 2019) ................................................... 3

*Marbury v. Madison*,

    5 U.S. (1 Cranch) 137 (1803) ................................................ 19

*Newman v. Guedre*,

    703 F.3d 757 (5th Cir. 2012) ........................................... 17, 18

*Newman v. Guedry*,

    703 F.3d 757 (5th Cir. 2012) ................................................ 13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,

    572 U.S. 545 (2014) ............................................................ 20

*Ortiz v. Jordan*,

    562 U.S. 180 (2011) ...................................................... 1, 6, 7

*Pearson v. Callahan*,

    555 U.S. 223 (2009) ............................................................ 12

*Pipitone v. Biomatrix, Inc.*,

    288 F.3d 239 (5th Cir. 2002), .............................................. 15

*Poole v. City of Shreveport*,

　691 F.3d 624 (5th Cir. 2012) ................................................. 14

*Ramirez v. Martinez*,

　716 F.3d 369 (5th Cir. 2013) ......................................... 17, 18

*Reeves v. Sanderson Plumbing Prods. Inc.*,

　530 U.S. 133 (2000) ............................................................... 4

*Rogers v. Jarrett*,

　63 F.4th 971 (5th Cir. 2023) ................................................ 21

*Ross v. Blake*,

　578 U.S. 632 (2016) ............................................................. 20

*Sosa v. Martin Cty.*, _ F.4th _, No. 20-12781, 2023 U.S. App. LEXIS 1494

　(11th Cir. Jan. 20, 2023) ..................................................... 20

*Werner v. Wall*,

　836 F.3d 751 (7th Cir. 2016) ............................................... 20

*Whitley v. Hanna*,

　726 F.3d 631 (5th Cir. 2013) ............................................... 17

*Willis v. Cleco Corp.*,

　749 F.3d 314 (5th Cir. 2014) ................................................. 3

## Statutes

42 U.S.C. § 1983 ...................................................................... 20

Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13 ...................... 21

## Rules

Fed. R. Civ. P. 56(a) ...................................................................... 3

## Other Sources

Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Calif. L.

Rev. 201 (2023)........................................................................... 21

William Baude, *Is Qualified Immunity Unlawful?*, 106 Calif. L. Rev. 45

(2018)........................................................................................ 20

# JURISDICTIONAL STATEMENT

In *Ortiz v. Jordan*, the Supreme Court explained that its own precedent dictates that if qualified immunity at summary judgment is denied on a purely legal issue, namely whether or not the law is "clearly established," that it can be heard on interlocutory appeal, but if it is decided on the basis that factual disputes prevent summary judgment, immediate appeal is not available.[1] It reasoned that cases involving "purely legal" questions generally involve disputes about the "substance and clarity of pre-existing law," and that because pre-existing law was not in controversy, but instead the dispute was over "facts that could render [the defendants] answerable for crossing a constitutional line," defendants were obliged to have raised their sufficiency-of-the-evidence-issue in a Rule 50(b) motion after trial.[2] Because the district court decided that fact issues precluded summary judgment, this Court does not have jurisdiction over this interlocutory appeal.

---

[1] 562 U.S. 180, 188–89 (2011).

[2] *Id.* at 190–92.

## STATEMENT OF THE ISSUES

1. Whether this Court should exercise jurisdiction over a purely factual qualified immunity ruling.

2. Whether the district court correctly found that a genuine dispute exists as to the material facts of this case that each Appellant violated Mr. Norman's constitutional rights.

# STATEMENT OF THE CASE

## Standard of Review

On appeal, grants of summary judgment are considered *de novo*.[3]

A court may only enter summary judgment when the moving party establishes that it is entitled to judgment as a matter of law because no genuine dispute exists as to any material fact.[4] The Court must draw all reasonable inferences in the light most favorable to the nonmoving party, Appellees here.[5] The burden rests on the moving party to demonstrate the lack of a genuine dispute of material fact.[6] On the other hand, the nonmoving party must identify the evidence in the record that supports its claim, and explain how the identified evidence does so.[7] There is a genuine dispute where a reasonable jury could find for the nonmoving party, and a fact is material if it could affect the outcome of the case.[8]

In deciding whether to grant judgment as a matter of law (much like a decision to grant summary judgment), a "court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, *at least to the extent*

---

[3] *Maldonado v. Rodriguez*, 932 F.3d 388, 390 (5th Cir. 2019) (internal citation omitted).

[4] Fed. R. Civ. P. 56(a).

[5] *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

[6] *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986).

[7] *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citations omitted).

[8] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

*that that evidence comes from disinterested witnesses.*"[9] When liability is disputed, an officer's account will invariably be favorable to himself, and the credibility of that account is crucial.[10] Here, summary judgment clearly cannot rest on the statements of interested witnesses—chiefly Appellants' own statements. "Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment."[11]

## SUMMARY OF THE ARGUMENT

Clear U.S. Supreme Court precedent precludes interlocutory qualified immunity appeals that involve factual issues, and neither Appellant has come even close to bringing an argument on appeal that gives this Court jurisdiction. Even if either Appellant had done more to frame their appeals in the context of purely legal issues, the district court's opinion itself makes abundantly clear that genuine factual disputes prevent summary adjudication. As a result, the Court can and should merely examine the district court's opinion and the Supreme Court's clear precedent on the issue, and dismiss the appeal for lack of jurisdiction without reaching the substance of Appellants' arguments.

Should the Court decide that it has jurisdiction, Appellants' substantive arguments also easily fail. They rely heavily on convincing this Court that the

---

[9] *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000) (emphasis added).

[10] *Gooden v. Howard County, Md.*, 954 F.2d 960, 971 (4th Cir. 1992).

[11] *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999).

videos available in this case indisputably and uncontrovertibly show the "facts" as they describe them in their respective briefs. However, many of their "facts" are clearly wrong, disputed, not material, or significantly spun. A reasonable jury could easily find that Mr. Norman's constitutional rights were violated when, for example, Ingle punched him in the face 5 times while he was restrained on the ground, or when Ingle and Sutton left him in a position of positional asphyxiation for 11 minutes.

## ARGUMENT

Evan Norman was fully pinned to the ground, barely moving, and non-resistant, when Deputy Ingle, with Deputy Sutton's encouragement, punched him at least five times in the face — at full force, with a closed fist — and choked him. Nothing that Evan had even arguably done prior to being pinned justified the five full-force punches to the face or the choking, nor did anything that occurred while he was pinned. What comes as no surprise is who did the punching; Deputy Ingle has a long history of violence, and this incident was not the first time he went too far in a use of force.[12] Then, with a face full of blood and barely conscious, Ingle and Sutton left Evan face-down for an extended period of time before he received any medical attention.

---

[12] *See generally* ROA.889–908 (Ingle's deposition describing his history with uses of force).

With that in mind, Appellee will begin by showing that this Court cannot extend its jurisdiction to this case, then demonstrate how Ingle and Sutton violated his clearly established constitutional rights.

1. **This Court does not have interlocutory appellate jurisdiction over this case because the district court made its determination on an explicitly factual basis.**

In *Ortiz v. Jordan*, the Supreme Court reiterated its understanding of the availability of interlocutory appeal in cases involving qualified immunity.[13] In that § 1983 case, the defendant officers were denied qualified immunity at summary judgment, did not file an interlocutory appeal, and lost at trial.[14] The Court explained that its own precedent dictates that if summary judgment is denied on a purely legal issue, namely whether or not the law is "clearly established," that it can be heard on interlocutory appeal, but if it is *decided* on the basis that factual disputes prevent summary judgment, immediate appeal is not available.[15] It ultimately held that, in either case, the defendants could not appeal the summary judgment decision: if summary judgment had been decided on a legal issue, the time for appeal had expired; and if summary judgment had been decided on a fact issue, defendants

---

[13] 562 U.S. 180 (2011).

[14] *Id.* at 188–89.

[15] *Id.* at 188 (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995)).

would have needed to file an appropriate post-verdict motion and appeal that, but failed to do so.[16]

The Court went on to address the defendants' argument that qualified immunity is a question of a "purely legal nature" when it involves only undisputed facts.[17] It reasoned that cases involving "purely legal" questions generally involve disputes about the "substance and clarity of pre-existing law," and that because pre-existing law was not in controversy, but instead the dispute was over "facts that could render [the defendants] answerable for crossing a constitutional line," defendants were obliged to have raised their sufficiency-of-the-evidence-issue in a Rule 50(b) motion.[18]

Here, this Court faces the first issue addressed by *Ortiz*, and has no reason not to reach the same result. *Ortiz* and *Johnson* are clear that *how* a district court makes its summary judgment decision determines appealability, and that "instant appeal is not available . . . when *the district court determines* that factual issues genuinely in dispute preclude summary adjudication."[19] The district court made just such a determination in this case. Specifically, it *began* its analysis by holding that:

> There is a genuine factual dispute regarding whether Norman posed an immediate threat to the safety of the officers or others, and whether he resisted arrest. The video evidence shows deputy Ingle striking Norman even while he was on the ground. A jury

---

[16] *Id.* at 188–89.

[17] *Id.* at 190–92.

[18] *Id.*

[19] *Id.* at 188 (citing *Johnson*, 515 U.S. at 313) (emphasis added).

could conclude that Norman was not resisting an arrest at the time because he was fully restrained. Moreover, it remains a disputed fact issue as to whether Norman was denied immediate medical attention, despite his alleged refusal. Hence, a factual dispute exists concerning the deputies' duty to ensure Norman's safety and well-being while being taken into custody.[20]

Thus, despite Appellant Ingle's attempts to skirt the issue by claiming that the video makes all his purported "facts" undisputed and his appeal therefore jurisdictional,[21] the "district court determine[d] that factual issues genuinely in dispute" — including the interpretation of the video evidence[22] — "preclude summary adjudication."[23] Indeed, Ingle's argument is a retread of a question that the Supreme Court answered squarely in *Ortiz*, namely that claiming the facts are "undisputed" does not create a legal issue where, as here, the substance and clarity of pre-existing law is not in controversy, but rather the application of "facts that could render [Appellants] answerable for crossing a constitutional line."[24] As a result, there is no basis for which this Court can exercise jurisdiction over this appeal, so it must be dismissed.

---

[20] ROA.986.

[21] Appellant Sutton does not appear to argue that his appeal is based on legal, rather than factual, grounds. *See* Appellant Sutton's Principal Brief (Sutton Brief) § Summary of the Argument.

[22] Appellant Ingle argues that the district court "assiduously avoided the undisputed video evidence," despite the fact that the opinion specifically references the fact that the court reviewed the video evidence several times. ROA.982–86.

[23] *Ortiz*, 562 U.S. at 188.

[24] *Id.* at 190–92.

**2. The district court was correct to hold that a reasonable jury could find each Appellant liable for violations of Mr. Norman's constitutional rights.**

As Appellants discussed (and the district court considered), much of the incident at issue was caught on video.[25] Although the videos do capture some undisputed, material facts (e.g. that Ingle punched Evan at least 5 times in the face while he was on the ground),[26] other "facts" claimed by Appellants are wrong, disputed, not material, or significantly spun. For example, Ingle claims that Evan "reached for Deputy Ingle's gun belt,"[27] but the video shows nothing more than a gesture with Evan's right hand,[28] and even if he had done as Ingle claims, it would not be material to the excessive force claim because it is so far removed from the beating that ultimately took place. Or that Ingle claims that "[t]here was no notebook in Norman's hand when he attacks" Ingle,[29] when he clearly was holding a notebook.[30]

It is no surprise, then, that Appellants' description of the videos have inaccuracies when it comes to the material facts. Primarily, they describe Mr. Norman "attacking" Ingle, putting him in a "headlock" and "punching"

---

[25] The video exhibits include: Deputy Ingle's Body-Worn Camera (Ingle BWC) [ROA.770–71]; Deputy Sutton's Body-Worn Camera (Sutton BWC) [ROA.770–71]; and Bombshells' surveillance footage (Bombshells Video) [ROA.770–71].

[26] *See, e.g.*, Bombshells Video at 1:46–51; *see also* Appellant Ingle's Principal Brief (Ingle Brief) p. 9 (admitting the same).

[27] Ingle Brief p. 5.

[28] Ingle BWC at 0:30.

[29] Ingle Brief p. 10.

[30] Ingle BWC at 2:04–06.

him;[31] Ingle goes as far as saying that "Norman was the first to hit anyone that night."[32] In reality, Sutton aggressively shoved Evan — a man he knew was intoxicated and thus physically unstable — twice toward a curb and poked him in the face,[33] and Ingle aggressively shoves Evan and continues toward him while Evan is off-balance and before Evan ever raises his arm.[34]

With respect to the "headlock" and "punching," the video shows a less clear picture than Appellants would have the Court believe. Again, Ingle shoves Evan backwards, and immediately continues charging toward Evan before Evan regains his balance, and Evan can be seen using his left hand, which is holding his notebook and pen, to block the oncoming Ingle.[35] At this point, Evan appears to take a swing at Ingle.[36] There are two important notes to make about Evan's attempted punch. First, he swings with his right hand toward Ingle's left ear, approximately.[37] That punch did not cause the "injury" Ingle claims, which appears to mainly be a small scratch above his

---

[31] *See generally* Ingle Brief § Factual Statement, Sutton Brief § Facts.

[32] Ingle Brief p. 10 (emphasis removed).

[33] Bombshells Video at 1:15–30.

[34] Ingle BWC at 2:02–06.

[35] Ingle BWC at 2:02–06.

[36] Ingle BWC at 2:04–06; Bombshells Video at 1:38–40. Appellee assumes for the sake of argument that this was an attempted punch, but does not concede the point should he determine otherwise in the future. *See* ROA.848–50, 856 (denying he assaulted anyone in his deposition).

[37] Bombshells Video at 1:38–40.

*right* temple.[38] And second, the attempted punch was just that — an attempt. The video shows that his punch did not land.[39]

The video does *not* "clearly" show, however, that Evan "had [Ingle] in a headlock with his right arm and was punching him in the face with his left hand."[40] Instead, the video shows that Evan's right arm is around the back of Ingle's neck, but does not come around far enough to have Ingle in a "headlock"; Evan's elbow stays roughly in line with the middle of Ingle's back, which does not create a "headlock."[41] Neither does the video show Evan "punching [Ingle] in the face with his left hand" at all.[42] It is unclear who is attempting to do what to whom while Ingle and Evan are holding each other. What is clear is that three armed men were able to get Evan to the ground, where they were able to pin him, and he was not resisting at that point.[43]

From there, as Appellants agree and the videos show, Ingle punched Evan in the head at least 5 times, and choked him. As a result of this

---

[38] ROA.542–43.

[39] Bombshells Video at 1:38–40.

[40] Ingle Brief p. 10. Notably, the quoted sentence does not cite to any evidence.

[41] Bombshells Video at 1:39–43.

[42] Bombshells Video at 1:39–43; *see also* Sutton BWC at 0:33–35.

[43] Bombshells Video at 1:41–50.

beating, Evan sustained severe injuries.[44] With those facts in mind, Appellee turns to Appellants' liability.

## 2.1. *Qualified immunity standard*

"As a theoretical backdrop, the doctrine of qualified immunity attempts to balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"[45] The affirmative defense of qualified immunity does not apply where a public official's conduct "violate[s] clearly established . . . constitutional rights of which a reasonable person would have known."[46]

At the outset, the Plaintiff first must plead facts that plausibly make out a constitutional injury.[47] To defeat qualified immunity, however, "the *plaintiff's version* of those disputed facts must also constitute a violation of clearly established law."[48] In order to be clearly established, "the unlawfulness of the challenged conduct must be beyond debate[, which] leaves the rare possibility [of] an obvious case . . . [where] the unlawfulness of the

---

[44] *See generally* ROA.857–62 (Mr. Norman's medical records — *e.g.* Bates # 000156–61, describing injuries sustained on the day of the incident, including the administration of morphine); *see also* ROA.851–55 (Mr. Norman describing his injuries).

[45] *Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020)(quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[46] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[47] *Joseph*, 981 F.3d at 330.

[48] *Id.* (emphasis added).

challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances."[49] Generally though, qualified immunity "requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances" was held liable, and the cases cited need not be *directly* on point.[50]

Moreover, this Court reminded us in *Cooper v. Brown* that when it comes to qualified immunity in excessive force cases, "[t]he central concept is 'fair warning.'"[51] With respect to clear establishment specifically, it further clarified that "'[t]he law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."[52] It went on to conclude that "in an obvious case, the *Graham* excessive-force factors themselves can clearly establish the answer, even without a body of relevant case law."[53]

### 2.2. Excessive force and bystander liability

With respect to excessive force under the Fourth Amendment, Appellee turns to *Joseph v. Bartlett*, one of this Court's more recent and thorough

---

[49] *Id.* (quotations, citations, and alterations omitted).

[50] *Id.* (quotations, citations, and alterations omitted).

[51] 844 F.3d 517, 524 (5th Cir. 2016) (citations omitted).

[52] *Id.* (quoting *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)).

[53] *Id.* (quoting *Newman*, 703 F.3d at 764) (internal quotation marks omitted).

13

opinions on excessive force.[54] In that case, it noted that the Fourth Amendment is violated "when a seized person suffers an injury that results directly and only from a clearly excessive and objectively unreasonable use of force."[55] In conducting that inquiry, the Court looked at several factors:

(1) the severity of the crime;

(2) whether the suspect posed an immediate safety threat;

(3) whether the suspect was actively resisting or attempting to evade arrest;

(4) the relationship between the need for force and the amount used;

(5) the timing, amount, and form of the suspect's resistance—including whether the suspect was engaged in "active" versus "passive" resistance; and

(6) whether the officer selected the appropriate degree of force by taking measured actions that correspond to the suspect's resistance.[56]

Here, the force involves three shoves in response to requests for the deputies' badge numbers, the wrestling and pinning it took to bring Evan to the ground, Sutton's punch to Evan's face while Evan was being taken down,[57] Ingle's punches to Evan's face, and Ingle grabbing Evan by the throat.[58] Appellee argues that the latter three uses of force (Sutton's punch,

---

[54] *Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020).

[55] *Id.* at 332 (citing *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)).

[56] *Id.* at 332–33 (internal quotations, citations, and annotations omitted).

[57] Bombshells Video at 1:41–43.

[58] Sutton BWC at 0:37–52; Bombshells Video at 1:42–2:00.

14

and Ingle's punches and choking) were far in excess to the need. Turning to the factor analysis:

(1) Appellant conceded below that the crime at issue (public intoxication) was not severe or inherently violent, and thus weighs in **Appellee's** favor;[59]

(2) Although he wrestled with Ingle, it is difficult to see any point at which he posed an immediate threat to Ingle or any of the other officers, of whom there were three, and all of whom were armed, trained, and sober, as opposed to the alone, unarmed, untrained, and drunk Mr. Norman; moreover, Evan was *no* threat to anyone by the time he was taken to the ground[60] — thus, this factor should weigh in **Appellee's** favor at this stage, or at least should be determined by a jury;

(3) As Appellants point out repeatedly, Mr. Norman never attempted to leave or otherwise flee, and although he resisted being taken to the ground by Ingle, he was responding to being shoved and tackled as opposed to resisting an attempted arrest; and again, by the time he was on the ground,

---

[59] ROA.527; *see also* ROA.870 (expert report of Dr. Keith Howse noting the same). Appellants both argue that Dr. Howse's report should not be considered. Sutton Brief ¶¶ 53–56; Ingle Brief pp. 34–36. A district court's decision on the admissibility of evidence is reviewed for abuse of discretion, *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002), which neither Appellant even argues. Either way, the district court did not abuse its discretion to the extent that its summary judgment opinion can be construed as a decision on the admissibility of the report (which it did not address), chiefly because the main flaw they point out — that Dr. Howse wrote his report before viewing the Bombshells video — is nullified by the fact that most of his report does not rely on the purported effects of seeing that video, and he considered the effect of Mr. Norman's "assault" of Ingle that Appellants insist it indisputably shows. *See generally* ROA.863–80.
[60] *See generally* Bombshells Video, Exhibit 3 p. 8.

he was not resisting, as the surveillance footage shows that he was barely moving on his own[61] — thus, because he was not resistant on the ground, did not attempt to flee, and could not flee, this factor weighs heavily in **Appellee's** favor;

(4) While the need for force was moderate (a physical takedown was ultimately necessary), the amount used was extremely high, as shown in brutal detail in Sutton's video of the punches to Evan's face and subsequent continued force, and as evidenced by Evan's extensive injuries[62] — thus, this factor clearly weighs in **Appellee's** favor;

(5) At worst, Evan engaged in active resistance until he was on the ground, but did not resist once on the ground[63] — as a result, this factor should weigh in **Appellee's** favor at this stage, or at least should be determined by a jury; and

(6) The deputies did not take measured actions that corresponded with Evan's, starting by resorting to shoving Evan for asking them for badge numbers, and ultimately resulting in Ingle *greatly increasing* his use of force by *savagely beating Mr. Norman's face **after** he stopped resisting* — thus, this factor also clearly weighs in **Appellee's** favor.

With respect to bystander liability, Mr. Norman must show: (1) that Sutton knew Ingle was violating Evan's constitutional rights (here, his 4th

---

[61] *See generally* Bombshells Video, Exhibit 3 p. 8.

[62] *See* Sutton BWC at 0:37–52, *see generally* ROA.857–62.

[63] *See generally* Bombshells Video, ROA.870–71.

Amendment right to be free from the use of excessive force), (2) that he had "a reasonable opportunity to prevent the harm," and (3) that he chose "not to act" anyway.[64] This Court also considers whether an officer acquiesced in the alleged constitutional violation.[65] Not only did Sutton fail to intervene, he encouraged Ingle to hit Evan, and helped hold Evan down while Ingle senselessly beat and choked him, despite being within arm's reach of Ingle for the duration of that force.[66] As a result, Sutton may be liable as a bystander.

With respect to qualified immunity, the *Graham* factors themselves and the *Joseph* case are both instructive. To further crystallize just how clearly established Evan's rights were here, he points to the following cases in reverse chronological order: *Doss v. Helpenstell*, 626 Fed. App'x. 453 (5th Cir. 2015) (per curiam) (unpublished), *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013), *Newman v. Guedre*, 703 F.3d 757 (5th Cir. 2012), *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009), *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000).

In *Doss*, this Court determined that the plaintiff was non-threatening, posed little risk of escape, and any resistance was passive at most, so the officer's decision to quickly escalate the situation by striking him in the head with his pistol rather than continue negotiating was not entitled to qualified

---

[64] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

[65] *Joseph*, 981 F.3d at 343 (citing *Whitley*, 726 F.3d at 647) (internal quotations, alterations, and other citations omitted).

[66] *See* Sutton BWC at 0:37–52.

immunity.[67] In *Ramirez*, the officers applied excessive force by using a taser in response to the plaintiff failing to put his hands behind his back, and pulling his arm away, and that tasing him after he had been handcuffed and on the ground was even more excessive.[68] In *Newman*, the plaintiff did "struggle" by backing into the officers, but it was not considered "active resistance"; and the officers "immediately resorted to [force] without attempting to use physical skill, negotiation, or even commands."[69] The officers there were held liable for excessive force. In *Deville*, a plaintiff was held at traffic stop for a minor violation without probable cause, displayed passive resistance in the face of an officer's threat, and gave no indication of an intent to flee, so the officer's decision to breaking her window with a flashlight, roughly extracting her from her car, causing a forceful blow to her abdomen, and applying the handcuffs too tightly was not entitled to qualified immunity.[70] And in *Goodson*, the officers were not entitled to qualified immunity where they tackled the plaintiff, audibly broke his shoulder, and then jerked his arm back to handcuff him despite being told that his shoulder was broken when they did so to a plaintiff who did not have time to comply with their order to put his hands on their car, and then

---

[67] *Doss*, 626 Fed. App'x. at 460.

[68] *Ramirez*, 716 F.3d at 378–79.

[69] *Newman*, 703 F.3d at 763.

[70] *Deville*, 567 F.3d at 169.

pulled his arm away in surprise at being grabbed and stumbled backwards due to being off-balance.[71]

### 2.3. Medical Care

With respect to denial of medical care, Deputy Ingle admits, and the videos show, that Evan was left face down for 11 minutes before he was adjusted upright.[72] This positional asphyxiation was against policy and was deliberately indifferent to his medical need to breathe.[73]

### 2.4. Qualified immunity is a countertextual common law doctrine that should no longer exist.

A foundational principle of the legal system is that "where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded. . . . for it is a settled and invariable principle . . . that every right, when withheld, must have a remedy, and every injury its proper redress."[74] Based on that bedrock understanding of the nature of legal rights, it must be the case that the qualified immunity defense has the power to negate the existence of constitutional rights altogether in certain cases by recognizing the existence of constitutional harms, but foreclosing the availability of a remedy. Whether or not a person's rights are erased is

---

[71] *Goodson*, 202 F.3d at 733–34, 740.

[72] Ingle Brief p. 11.

[73] ROA.875.

[74] *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803).

determined by an ultimately arbitrary standard — clear establishment — that also has the effect of shrinking the number of actionable claims as society and technology evolve past the factual scenarios that can currently be said to "clearly establish" any given right. Appellate judges are also beginning to question the propriety of the doctrine.[75]

Indeed, qualified immunity is a "legal fiction" that came from the faulty interpretation of § 1983.[76] "[S]tatutory interpretation, as we always say, begins with the text,"[77] and often "ends" there as well.[78] And § 1983's text is clear: "Every person who, under color of *any* statute . . . subjects . . . *any* citizen of the United States . . . to the deprivation of *any* rights, privileges, or immunities . . . shall be liable to the party injured in an action at law."[79] Nowhere in that text does Congress mention or provide for immunity.[80] Moreover, § 1983's original text held actors liable when acting under color of state law, "any such law, statute, ordinance, regulation, custom, or usage

---

[75] *See, e.g., Sosa v. Martin Cty.*, _ F.4th _, No. 20-12781, 2023 U.S. App. LEXIS 1494, at *16–17 (11th Cir. Jan. 20, 2023) (en banc) (Jordan, J., concurring in the judgment).

[76] *Id.*; *accord Werner v. Wall*, 836 F.3d 751, 768 (7th Cir. 2016) (Hamilton, J., dissenting).

[77] *Ross v. Blake*, 578 U.S. 632, 638 (2016).

[78] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014).

[79] 42 U.S.C. § 1983 (emphasis added).

[80] *See, e.g., Hoggard v. Rhodes*, 141 S. Ct. 2421, 2421 (2021) (Thomas, J., concurring in denial of certiorari) (contemporary two-part qualified immunity "test cannot be located in § 1983's text and may have little basis in history."); William Baude, *Is Qualified Immunity Unlawful?*, 106 Calif. L. Rev. 45, 47 (2018) (examining and rejecting various rationales for qualified immunity as a proper textualist interpretation of §1983).

of the State to the contrary notwithstanding."[81] That phrase was "meant to encompass" existing common law defenses and immunities—and make them unavailable to defendants.[82] As a result, "modern [qualified] immunity jurisprudence is not just *a*textual but *counter*textual."[83]

## CONCLUSION

For the foregoing reasons, Appellee respectfully requests that the Court **DISMISS** Appellants' appeal, and **AFFIRM** the district court's denial of qualified immunity should it find that it has jurisdiction over all or part of this interlocutory appeal.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas
   Bar No. 24123583
alex@acj.legal
511 Broadway Street
Houston, Texas 77012
Telephone: 573.340.3316
**Attorney for Appellant**

---

[81] Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Calif. L. Rev. 201, 235 (2023) (quoting Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13).

[82] *Id.*

[83] *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023) (emphasis in original) (Willett, J., dissenting).

*/s/ Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
   Bar No. 00790995
attorneykallinen@aol.com
511 Broadway Street
Houston, Texas 77012
Telephone: 713.320.3785
Fax: 713.893.6737
**Attorney for Appellant**

## CERTIFICATE OF SERVICE

I certify that on January 22nd, 2025, the foregoing Brief was filed electronically using the Court's CM/ECF system, which will give notice to all counsel of record through the Court's ECF System.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellant**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,840 words in total. This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word version 16, and is set in Adobe Caslon Pro, size 14.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellant**